# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL ALAN CROOKER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.<br>) 13-30199-FDS |
| UNITED STATES, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS

**SAYLOR, J.**

This dispute arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Plaintiff Michael Alan Crooker has filed a complaint against the United States alleging malicious prosecution, negligence, and medical maltreatment by the United States Marshals Service ("USMS") and the United States Bureau of Prisons ("BOP"). The complaint alleges that the USMS and BOP failed to abide by a court order requiring Crooker's pre-trial transfer to a facility where he could be treated for liver disease; failed to provide him eyeglasses for one year; denied him non-emergency dental treatment for nine-and-one-half years; and denied him cataract surgery for four years.

Defendant has moved for partial dismissal of the complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

For the reasons stated below, defendant's motion to dismiss will be granted in part and denied in part.

## I. Background

The following facts are presented as stated in the complaint and supplemented by information in the public record.

### A. The Silencer Case and the Threat Case

On July 11, 2006, a jury convicted Michael Crooker of causing the interstate transportation of a firearm by a prohibited person. The "firearm" was a silencer for an airgun. Crooker appealed, and the First Circuit reversed the conviction and ordered an acquittal in 2010. At that point, Crooker had been incarcerated for more than six years in connection with that proceeding. During that period of incarceration, he had filed numerous lawsuits against government employees and officials. *See United States v. Crooker*, 3:07-cr-30038 (D. Mass.) (Dkt. No. 102-1). Crooker now contends that, based on his work history as a bus driver, he lost $222,000 income in the period from June 2004 to 2010 when he was incarcerated in connection with the silencer case.

Upon his release from prison on September 13, 2010, Crooker was arrested on charges related to the silencer case, including mailing a threat to use a deadly toxin against the Assistant U.S. Attorney who had prosecuted him. On March 25, 2011, Crooker signed a plea agreement, pursuant to which he agreed to plead guilty to mailing a threatening communication in violation of 18 U.S.C. § 876(c) and possession of a toxin without registration in violation of 18 U.S.C. § 175b(c)(1). *See United States v. Crooker*, 3:07-cr-30038 (D. Mass.) (Dkt. No. 102). That plea agreement, in part, required Crooker to dismiss all pending lawsuits relating to the threat case or the silencer case and not to bring any further lawsuits relating to the threat case. That provision states:

> 8. Civil Litigation Arising From the Investigation and Prosecution of This Case
>
> In addition to filing motions to suppress evidence in this case based on alleged violations of his Fourth Amendment rights, Defendant has filed at least eight civil lawsuits seeking damages from public entities and current and former law enforcement officers who Defendant claims are responsible for those alleged violations. The United States Attorney is currently defending each of those civil actions and believes that all of them lack merit. In addition to pleading guilty as set forth in Paragraph 1 of this Agreement, Defendant agrees that, no later than the time of sentencing, he will execute stipulations of dismissal of each lawsuit described in Exhibit 1 hereto, as well as any other lawsuits Defendant has filed against public entities or current or former government employees or contractors connected to the investigation and prosecution of Criminal No. 04-30034-PBS [the silencer case] or this case. Defendant further agrees to make no requests under the Freedom of Information Act or any related or analogous law, and to file no administrative claims or lawsuits whatsoever, relating to the events connected to the investigation of and prosecution of this case that occurred before the date of the plea agreement.

*Id.* On June 20, 2011, Crooker was sentenced to fifteen years in prison in the threat case. *See United States v. Crooker*, 3:07-cr-30038 (D. Mass.) (Dkt No. 105).[1]

### B. Facts Relating to the Malicious-Prosecution Claim

According to the complaint, Crooker was framed in the silencer case as to the offense of causing the interstate transportation of a firearm by a prohibited person. The complaint alleges that the arresting agents and prosecutor knew of Crooker's success in prior lawsuits against the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") and the United States Postal Inspection Service ("USPIS"); that he repeatedly told the agents that the device was legal; and that he had challenged the criminal jury instruction that the device needed only to be capable of being used as a firearm silencer. It further states that the device was seized within Massachusetts and that Crooker's actions therefore constituted only an attempt to transport the device across

---

[1] Crooker is currently incarcerated pursuant to that sentence. The term of detention on the silencer case of six years, 83 days was credited to his sentence as time served.

state lines, which, as an interrupted attempt, is not prohibited by 18 U.S.C. §922(g). According to the complaint, the government later mailed the device from Massachusetts to Ohio, causing it to cross state lines. The complaint suggests that the agents and prosecutor were motivated to prosecute Crooker maliciously because he owned publications about firearms (and the types of firearms that prohibited persons can legally possess) that were seized during a search of his home.[2] The complaint notes that no other individuals involved in the construction or purchase of the device were prosecuted.

On March 16, 2011, Crooker filed a complaint in this Court alleging malicious prosecution. *See Crooker v. United States*, No. 11-10495-RWZ (D. Mass.). Judge Zobel dismissed the complaint on April 12, 2011, because Crooker had moved to proceed *in forma pauperis* but had been barred from doing so under 28 U.S.C. § 1915(g), the so called "three-strike" rule.[3]

On July 11, 2012, Crooker filed an administrative tort claim against the ATF, the USMS, the BOP, the USPIS, and the Executive Office for U.S. Attorneys alleging malicious prosecution. He received an acknowledgment letter on July 20, 2012. After inquiring about the claim in June 2013, Crooker was told that he could exercise his option under 28 U.S.C. § 2675(a) to deem his claim denied and file suit.

### C. Facts Relating to the Negligence and Medical Maltreatment Claims

According to the complaint, Crooker has suffered from several physical injuries as a

---

[2] Crooker has been a prohibited person under the Gun Control Act, 18 U.S.C. § 922(g), since 1970. A prohibited person is prohibited from possessing or transporting modern gunpowder-burning firearms or other items that fall within the definition of firearm in 18 U.S.C. § 921(a)(3). Crooker contends that under federal law airguns are not firearms.

[3] Crooker is not proceeding *in forma pauperis* in this case.

result of negligence and medical maltreatment during his imprisonment. His injuries allegedly relate to his liver, vision, and teeth. The allegations may be summarized as follows:

### 1. **Liver-Related Injury**

On September 20, 2005, Judge Ponsor issued an order directing the U.S. Marshal to transfer Crooker to FMC Devens for his pretrial confinement. The motion requesting transfer alleged that he was not receiving medical treatment for hepatitis C. The complaint in this case alleges that he was not transported until January 11, 2012. On February 14, 2012, Crooker underwent a liver biopsy. He was later diagnosed with cirrhosis, an end-stage liver disease, rated as a 6 on a 0-6 scale, and an endoscopy revealed gastric and esophageal varices, a common and fatal complication of cirrhosis.

On July 11, 2012, Crooker filed an administrative tort claim relating to the denial of medical treatment. On December 20, 2012, BOP denied the claim. Crooker filed for reconsideration, which BOP denied on March 28, 2013. He received the letter on April 8, 2013.

Crooker alleges that he was segregated in a special housing unit from August 23, 2013, to November 1, 2013, without access to a typewriter or ink pens.[4] Upon release, Crooker was transferred to FCI Cumberland. There, he had access to a typewriter on November 13, 2013, but claims that it took him one week to learn the routine of the prison and therefore argues that the period of time for filing a complaint relating to his alleged liver injury should be extended to November 20, 2013.

---

[4] Crooker filed an administrative action challenging his lack of access to a typewriter and ink pens and requesting access to a typewriter or, in the alternative, that the filing deadline be tolled. The BOP denied his claim on October 29, 2013, and denied his regional appeal on October 31, 2013. Crooker filed a national appeal, which had not been decided as of the filing of the complaint.

## 2. Vision-Related Injuries

According to the complaint, Crooker was improperly deprived both of recommended cataract surgery and of his eyesight for a one-year period in which he was waiting to procure glasses. He alleges that the cataracts cause him to experience headaches when reading and watching television.

In 2009, at FCI Loretto, an optometrist referred Crooker to an outside ophthalmologist for cataract surgery. Ophthalmologist Dr. Charles Howard allegedly countermanded the surgery referral because of insufficient funds. Crooker filed an administrative appeal to oppose the countermand, but that appeal was "interrupted" when the First Circuit reversed his conviction. On April 1, 2011, officials at the Wyatt Detention Facility sent Crooker to see a second outside ophthalmologist. A physician recommended surgery on the right eye. That recommendation was put on hold pending Crooker's sentencing in the threat case.

At FCI Otisville, an optometrist recommended cataract surgery for Crooker, but at FMC Devens, Dr. Howard countermanded that referral. Allegedly, Crooker offered to pay for the surgery but was not allowed to do so. Crooker filed an administrative action as to the denial of cataract surgery and later as to experimental, non-FDA-approved cataract eye drops that he wished to obtain at his own expense. Those complaints were denied, as were his appeals. Crooker filed multiple suits in federal court relating to his eye care while at FMC Devens that were later mooted due to his transfer.

On April 13, 2012, an ophthalmologist allegedly told Crooker that he would be placed on the list to be scheduled for a refraction examination. The refraction machine failed at his appointment on September 10, 2012. The doctor conducted a manual refraction examination at a

subsequent appointment on December 31, 2012. According to the response to the administrative remedy request provided by Crooker, the eyeglasses were ordered with the next cycle on February 7, 2013, and would likely be delivered six to eight weeks thereafter. This response also calculated Crooker's waiting time for glasses to be about three months because it had not been determined that eyeglasses were needed until his examination on December 31, 2012. On April 9, 2013, the Medical Department delivered Crooker's eyeglasses, which allegedly only partially correct his vision. The complaint alleges that his vision will remain imperfect without the cataract surgery. Crooker filed an administrative tort claim that BOP denied on October 22, 2013.

### 3. **Dental Injuries**

At the time of his arrest, Crooker did not have all of his teeth; he currently has twelve missing teeth. He alleges that he cannot chew on his left side, has minimal ability to chew on his right side, and experiences pain when eating.

Crooker allegedly has received emergency dental treatment at various facilities, including Wyatt Detention Facility, Essex County Correctional Facility, MacDougall Correctional Institution, FTC Oklahoma City, FCI Victorville-I, and FCI Otisville. In November 2007, he was placed on the dental waiting list for non-emergency restorative care, but learned that he may have to wait years. At the end of 2012 or beginning of 2013, FMC Devens agreed to provide Crooker dentures. Before he could obtain the dentures, he allegedly had to have two broken teeth extracted, which could not occur until after his hepatitis anti-viral treatment ended. He was cleared for the dental extractions in August 2013.

For a period of time beginning in August 2013, Crooker was placed in the special

7

housing unit due to morphine addiction. There, he could not receive restorative care because special housing unit inmates are not allowed to receive medical care except for emergencies.

Crooker filed an administrative tort claim with the USMS and the BOP that was denied on June 12, 2013. According to the complaint, upon denial of the claim, Crooker was told he could file a lawsuit within six months.

## II.  Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429

8

U.S. 97, 106 (1976)) (internal quotation marks omitted). *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

**III.   Analysis**

   **A.   Claim for Failure to Provide Eyeglasses**

Plaintiff contends that BOP's failure to provide him eyeglasses for one year constitutes negligence and medical malpractice. Such a claim requires proof that "a physician-patient relationship existed between the physician and the injured party, that the physician breached his or her duty of care, and that the breach was the proximate cause of the injury." *Mitchell v. United States*, 141 F.3d 8, 13 (1st Cir. 1998). Where there is no injury, there is no cause of action for negligence in tort law. *Mystic Landing, LLC v. Pharmacia Corp.*, 417 F. Supp. 2d 120, 124 (D. Mass. 2006); *see also* Injury, *Black's Law Dictionary* (9th ed. 2009) (defining "personal injury" as "any harm caused to a person, such as a broken bone, a cut, or a bruise" and "bodily injury" as "physical damage to a person's body" or "any invasion of a personal right, including mental suffering").

The government contends that plaintiff's alleged injury—the delay in receiving eyeglasses and his impaired vision during that delay—does not constitute a sufficient injury. While the complaint does not allege that plaintiff's eyesight deteriorated because of the delay or was otherwise permanently damaged, the alleged harm is sufficient for the claim to survive a motion to dismiss. *See Buculei v. United States*, 2011 WL 3439192 (D. Mass. Aug. 4, 2011) (denying motion to dismiss a claim that plaintiff did not receive timely treatment, where the delay ranged from one day to several months and the delay adversely affected plaintiff's ability to function properly).

9

The government also contends that the complaint fails to state a claim in that it does not specifically allege that a breach of a physician's duty of care was the proximate cause of plaintiff's injury. However, the plaintiff here is *pro se*, and "a pro se plaintiff is entitled to liberal construction of his allegations, no matter how inartfully [pleaded]." *Stern v. Haddad Dealerships of The Berkshires, Inc.*, 477 F. Supp. 2d 318, 321 (D. Mass. 2007). While the complaint does not explicitly allege that a physician breached a duty of care, it clearly implies that Dr. Howard breached a duty of care that he owed to plaintiff. That is sufficient to survive a motion to dismiss. *See id.*

Accordingly, defendant's motion to dismiss will be denied as to the eyeglasses claim.

### B. Claim for Malicious Prosecution

The complaint alleges that the government is liable for malicious prosecution in connection with the silencer case. The government contends that plaintiff is barred from asserting the claim because plaintiff agreed to dismiss an identical case under the plea agreement in the threat case.

Plaintiff contends that the plea agreement was coerced and not voluntary, and is therefore unenforceable under *Newton v. Rumery*, 480 U.S. 386 (1987). In *Rumery*, the Supreme Court confronted a question of the legality of a release-dismissal agreement that "purported to waive a right to sue conferred by a federal statute." 480 U.S. at 392. As a general matter, plea agreements are constitutional, even though a guilty plea waives important constitutional rights. *Id.* at 393. While "in some cases these agreements may infringe important interests of the criminal defendant and of society as a whole . . . the mere possibility of harm to these interests [did not call] for a per se rule." *Id. See Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp.

10

2d 344, 360 (D. Mass. 2002). In fact, entering into such an agreement may "reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Rumery*, 480 U.S. at 394. That said, for the agreement to be enforceable, a criminal defendant must have entered into it both knowingly and voluntarily. *Santobello v. New York*, 404 U.S. 257, 261-262 (1971); *United States v. Teeter*, 257 F.3d 14, 24 (1st Cir. 2001); *Valle Colon v. Municipality of Maricao*, 2011 WL 1238437, at *13 (D.P.R. Mar. 23, 2011) (explaining that the absence of a clear written agreement that could be reviewed and the lack of an on-the-record statement of the rights being waived indicated that "the waiver was not knowing and voluntary").

Here, the plea agreement clearly satisfies the standard set in *Rumery*. Whereas the agreement in *Rumery* was informal and not subject to judicial oversight, *see Rumery*, 480 U.S. at 393 n.3, the agreement here was subject to judicial oversight. The presiding judge found that the plea had been entered into knowingly and voluntarily before he accepted it on March 28, 2011. The agreement therefore binds the parties to its terms. *See United States v. Crooker*, 3:07-cr-30038 (D. Mass.). In the plea agreement, the government agreed to dismiss counts two through eight of the indictment in exchange for plaintiff's guilty plea on counts one and nine and his dismissal of every civil lawsuit he had filed relating to the threat case or the silencer case. *See United States v. Crooker*, 3:07-cr-30038 (D. Mass.) (Dkt. No. 102). It is apparent that the agreement reflects "a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *See Rumery*, 480 U.S. at 394. Accordingly, the plea agreement's release of claims clause is binding on plaintiff.

On March 16, 2011, plaintiff filed in this Court a nearly identical malicious-prosecution

claim regarding the silencer case. Nine days later, on March 25, 2011, plaintiff signed the plea agreement, stipulating that he would dismiss all civil actions relating to the silencer case that he had filed as of March 25, 2011. Accordingly, the malicious-prosecution claim qualifies as one of cases that plaintiff agreed to dismiss, namely, one of the "any other lawsuits [plaintiff] has filed against public entities or current or former government employees or contractors connected to the investigation and prosecution of Criminal No. 04-30034-PBS." *See United States v. Crooker*, 3:07-cr-30038 (D. Mass.) (Dkt. No. 102). Plaintiff contends that he did not dismiss the claim himself, but rather that Judge Zobel did so after refusing to let him proceed *in forma pauperis*. However, it does not matter that the action was dismissed involuntarily, because it was one of the civil actions covered by the plea agreement.

The sole remaining question is whether the plea agreement unambiguously provided that those claims would be dismissed with prejudice. For the following reasons, the Court finds that it did.

Basic principles of contracts apply to plea agreements. *United States v. Rios-Hernandez*, 645 F.3d. 456, 461 (1st Cir. 2011); *United States v. Newbert*, 504 F.3d 180, 185 (1st Cir. 2007). It is well-established that defendants may waive both constitutional and statutory rights as part of a plea agreement and that allowing defendants to waive these rights makes it more likely for the parties to "reach an accord." *United States v. Teeter*, 257 F.3d 14, 22-23 (1st Cir. 2001).

When interpreting language in a contract, the court should consider the contract as a whole, not merely the isolated words. *United States v. Okoye*, 731 F.3d 46, 49 (1st Cir. 2013). Provisions in a plea agreement should be construed so as to not render any of its terms meaningless. *United States v. Alegria*, 192 F.3d 179, 185 (1st Cir. 1999) ("[P]lea agreements,

12

like contracts generally, should be construed where possible to give effect to every term and phrase."); *Aware, Inc. v. Centillium Commc'ns, Inc.*, 604 F. Supp. 2d 306, 311 (D. Mass. 2009); *Baybank Middlesex v. 1200 Beacon Properties, Inc.*, 760 F. Supp. 957, 963 (D. Mass. 1991). "If the language of a contract is ambiguous a motion to dismiss must be denied." *Aware, Inc.*, 604 F. Supp. 2d at 310. Any ambiguity in a plea agreement must be construed against the government. *Newbert*, 504 F.3d at 185. A contract is ambiguous "'where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." *Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008) (quoting *Suffolk Constr. Co. v. Lanco Scaffolding Co.*, 47 Mass. App. Ct. 726, 729 (1999)).

A construction of the provision at issue to mean that plaintiff agreed to dismiss the claims without prejudice would render the provision meaningless. *See Alegria*, 192 F.3d at 185 (explaining that plea agreements must be construed to give meaning to every term or phrase). If the claims were dismissed without prejudice, then plaintiff did not give up anything by the provision, the government did not gain anything, and there would be no point to including it in a plea agreement. Looking at the provision and agreement as a whole, it is clear that "dismissed" means dismissed with prejudice. *See Okoye*, 731 F.3d at 49. Accordingly, plaintiff cannot pursue his malicious-prosecution claim. *See Aware, Inc.*, 604 F. Supp. 2d at 310.

In any event, even if the March 2011 plea agreement did not bar plaintiff from bringing the malicious-prosecution claim, the statute of limitations of the Federal Tort Claims Act would bar the claim. The FTCA requires that all tort actions against the United States be "presented in writing to the appropriate Federal agency within two years after such claim accrues" and be filed "within six months after the date of mailing . . . of notice of final denial of the claim by the

13

agency to which it was presented." 28 U.S.C. § 2401(b). Failure to file within the limitations period "means that the district court lacks subject matter jurisdiction to entertain the suit and must dismiss" the claims. *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003).

Generally, an FTCA claim accrues "at the time of the injury." *Donahue v. United States*, 634 F.3d 615, 623 (1st Cir. 2011). In the medical-malpractice context, under the "discovery rule," an injury accrues when plaintiff "knows (or is chargeable with knowledge) of both the existence and the cause of [his] injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111 (1979)). A plaintiff is charged not only with what he actually knew about his injury, but also with "what a reasonable person, once fairly prompted to investigate, would have discovered by diligent investigation." *Litif v. United States*, 670 F.3d 39, 44 (1st Cir. 2012). The intent of the discovery rule is to protect plaintiffs who are "'blamelessly unaware of their claim because the injury has not yet manifested itself" or a causal link between the injury and the tortious act is not yet evident. *Donahue*, 634 F.3d at 623. The discovery rule applies where either the injury or the cause, or both, is latent. *Attallah v. United States*, 955 F.2d 776, 780 (1st Cir. 1992).

Here, plaintiff's alleged malicious-prosecution injury accrued on June 18, 2010, when the First Circuit reversed his conviction and remanded for acquittal. On that date, plaintiff's injury became apparent and known, as no action remained for the district court except to acquit plaintiff. The two-year limitations period, therefore, expired on June 18, 2012. Plaintiff filed the malicious-prosecution claim in July 2012. Thus, the malicious prosecution claim is barred by 28 U.S.C. § 2401(b) because plaintiff failed to bring his tort claim within two years of his injury. [5]

Accordingly, the motion to dismiss the malicious-prosecution claim will be granted.

---

[5] This Court does not need to reach the issue whether the malicious-prosecution claim is barred by either the discretionary function exception or sovereign immunity.

## C. Claim for Injuries to Liver

The statute of limitations also operates to bar plaintiff's claims based on alleged injuries to his liver.

The BOP denied plaintiff's administrative claim on April 8, 2013. From that date, plaintiff had six months, or until October 8, 2013, to file a lawsuit. 28 U.S.C. § 2401(b). Plaintiff acknowledges that he did not file by that deadline, but contends that BOP prevented his timely filing by placing him in a special housing unit in which he did not have access to a typewriter or ink pens. This Court does not need to decide the issue of whether the placement in the special housing unit warrants tolling of the filing deadline, because the claim is also barred by the two-year statute of limitations in which to present an agency with the claim.

Plaintiff knew of his hepatitis C at least six years prior to filing his claim, as made apparent by the fact that he successfully argued that the district court should issue a court order for his pre-trial transfer to a medical facility to obtain treatment for hepatitis C, including a liver biopsy. His conviction on July 11, 2006, marks the last possible date that could reasonably be considered "pre-trial." Accordingly, plaintiff's injury accrued on July 11, 2006, when he was not transferred pre-trial for hepatitis C treatment and a liver biopsy. The limitations period therefore expired on July 11, 2008. Plaintiff filed an administrative complaint in July 2012, approximately four years later.

Plaintiff contends that his injury accrued when a doctor at FMC Devens diagnosed him with cirrhosis. But plaintiff knew that he had hepatitis C no later than 2006. Based on his request for a liver biopsy around that time, it also appears he knew that hepatitis C caused liver damage and could lead to cirrhosis if left untreated. Moreover, even if he did not actually know

that hepatitis C would cause problems with his liver, he is charged with knowing what a reasonable person would have known upon investigation of the long-term consequences of hepatitis C. A reasonable person upon investigation would know that the natural progression of hepatitis C is liver damage and possibly cirrhosis. *See Donahue v. United States*, 634 F.3d at 623 (citing *United States v. Kubrick*, 444 U.S. 111 (1979) (charging plaintiff with knowledge that a reasonable person would discover upon investigation). Thus, plaintiff cannot say that his injury was unknown or had not yet accrued by claiming that he was unaware of damage to his liver that the hepatitis C could cause over time.

Plaintiff also contends that the statute of limitations does not bar his claim under the continuing tort doctrine. However, that doctrine is inapplicable, as there is no continuing action in this case. The alleged injury arises from one act: the alleged failure to transfer plaintiff to FMC Devens pursuant to the court order. A single act does not constitute a continuing tort. *See Dziura v. United States*, 168 F.3d 581 (1st Cir. 1999) (explaining that continued deprivation of an item that arises out of an unlawful act of an agency does not amount to a continuing violation); *see also Gilbert v. City of Cambridge*, 932 F.2d 51, 58-59 (1st Cir. 1991) (explaining the distinction between "a continuing act and a singular act that brings continuing consequences in this roiled wake" and finding that for the single act the "statue of limitations ran uninterrupted" after the act occurred). The complained-of action therefore falls outside the limitations period.

In sum, plaintiff cannot pursue a claim against the United States based on his alleged injuries due to cirrhosis. Accordingly, the motion to dismiss will be granted as to that claim.

### D. The Claims for Cataract and Dental Injuries

Pursuant to 28 U.S.C. § 2401(b), the government has moved to dismiss plaintiff's claims concerning events occurring more than two years prior to when plaintiff filed his administrative claim. Plaintiff contends that these claims fall under the continuing-violation doctrine and therefore are not barred.

On December 6, 2012, plaintiff filed an administrative claim relating to the cataracts and dental care he had received while incarcerated. Many instances of care and requests for care pre-date December 2010. The two-year limitations period therefore bars plaintiff from asserting claims that relate to events prior to December 6, 2010. *See Buculei v. United States*, CIV.A. 09-40215-DJC, 2011 WL 3439192 (D. Mass. Aug. 4, 2011) (holding that pursuant to the statute of limitations of the FTCA the court lacked subject-matter jurisdiction over prisoner's dental claims that occurred more than two years prior to when prisoner filed a tort claim with the Bureau of Prisons).

Despite plaintiff's contention, the continuing-violation doctrine does not extend his time to file a complaint relating to his dental and cataract claims. That doctrine applies where plaintiff's injury is unknown or undiscoverable. *Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999) ("The [continuing violation] doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it."). A necessary element to invoking the continuing violation doctrine is that "the otherwise time barred events did not trigger his 'awareness and duty' to assert his rights." *Windross v. Barton Protective Services, Inc.*, 586 F.3d 98, 103 (1st Cir. 2009) (explaining that awareness and duty is triggered when plaintiff knew or had reason to know of the injury).

As to his dental treatment, plaintiff received emergency dental treatment from various health professionals at multiple facilities over his period of incarceration. The complaint lists multiple times before 2010 when plaintiff requested restorative care, indicating that he knew of his injury prior to 2010. *See Windross*, 586 F.3d at 103 (finding that because plaintiff reasonably believed that earlier violations had caused his injury, he was not allow to invoked the continuing violation doctrine); *see also Williams v. Raytheon Co.*, 220 F.3d 16, 21 (1st Cir. 2000) (explaining that the continuing violation doctrine did not apply because plaintiff believed, at the time of an earlier act, that the earlier act caused injury). The complaint also indicates that plaintiff knew of the deteriorating condition of his teeth prior to 2010. *See id.* The continuing violation doctrine therefore does not apply to his claim for inadequate dental treatment. Plaintiff's claims for all events occurring prior to December 6, 2010 will be dismissed in accordance with 28 U.S.C.A. § 2401(b).

As to plaintiff's cataracts, the statute of limitations likewise operates to bar all claims for events that occurred prior to December 6, 2010. Plaintiff acknowledges in his complaint that the first time that his eyes qualified as severe enough to require surgery was on November 27, 2009. Prior to the First Circuit's reversal of plaintiff's conviction in June 2010, plaintiff had filed an administrative claim as to Dr. Howard's countermand of the referral for cataract surgery. At a minimum, the initiation of proceedings marks the point at which knowledge of injury should be implied. *See Windross*, 586 F.3d at 103 (explaining that awareness and duty exist when plaintiff knows or should know of the injury). Thus, the continuing violation doctrine does not apply to plaintiff's cataract claims. Consequently, the limitations period bars plaintiff from asserting cataract claims that arose from events occurring prior to December 6, 2010, and the motion to

dismiss will therefore be granted as to those claims.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part. All claims are DISMISSED except those claims for alleged injuries from failing to provided treatment for cataracts and for improper dental care that arose after December 6, 2010, and the claim involving an alleged delay in receiving eyeglasses.

**So Ordered.**

                                               /s/ F. Dennis Saylor
                                               F. Dennis Saylor IV
                                               United States District Judge

Dated: July 23, 2014