# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL ALAN CROOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 13-30199-FDS |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER ON
# CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This dispute arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Plaintiff Michael Alan Crooker filed a complaint against the United States alleging malicious prosecution, negligence, and medical maltreatment by the United States Marshals Service ("USMS") and the United States Bureau of Prisons ("BOP"). The complaint alleged that the USMS and BOP failed to abide by a court order requiring Crooker's pre-trial transfer to a facility where he could be treated for liver disease; failed to provide him eyeglasses for one year; denied him non-emergency dental treatment for nine-and-one-half years; and denied him cataract surgery for four years.

Defendant moved to dismiss all counts for failure to state a claim. This Court granted the motion as to the claim for malicious prosecution, the claim relating to liver disease, and the claims for injuries related to the allegedly inadequate eye and dental care that arose before December 6, 2010. Plaintiff has since waived the claims related to the alleged denial of cataract

surgery and dental treatment. The only remaining claim is that based on the alleged delay in receiving eyeglasses. The parties have now cross-moved for summary judgment.[1]

For the reasons stated below, defendant's motion will be granted in part and denied in part and plaintiff's motion will be denied.

**I.     Background**

    **A.     Factual Background**

The following facts are undisputed unless otherwise noted.

Crooker is an inmate at the Federal Correctional Institution in Cumberland, Maryland. From January 11, 2012, through November 1, 2013, he was an inmate at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). Upon his arrival at FMC Devens, Crooker underwent an initial medical screening but did not undergo an eye examination. The parties agree that Crooker owned eyeglasses at that time; Crooker contends that they were non-prescription reading glasses that had been purchased from the prison commissary.[2] Crooker further contends that he began writing to prison officials immediately upon his arrival at FMC Devens to complain of cataracts and impaired vision.

On April 13, 2012, Crooker underwent an eye examination conducted by Dr. Charles Howard, an ophthalmologist. Dr. Howard works full-time at FMC Devens. The examination showed that without correction Crooker had 20/70 vision in his right eye and 20/40 vision in his left eye. The examination also revealed evidence of prior refractive eye, or LASIK, surgery. A

---

[1] The government's motion for summary judgment was filed prior to plaintiff's waiving the cataract and dental claims. The motion will be granted as to those two claims.

[2] The government has simply contended that Crooker had eyeglasses at the time of the examination and has neither admitted nor denied Crooker's contention that they were non-prescription eyeglasses.

dilated examination displayed early cataract changes and a small pigment spot on the iris of the right eye. Finally, the examination showed mild hypertensive changes in the retinas of both eyes. According to Crooker, Dr. Howard told him that he was ineligible for cataract surgery because he was not assigned to a qualifying prison job and because at least one of his eyes would possess vision of better than 20/60 after correction with eyeglasses. The parties agree that Dr. Howard told Crooker that a refraction test for a new eyeglass prescription would be scheduled.

On September 10, 2012, clinicians attempted to perform an automatic refraction test on Crooker's eyes, but the test failed. According to the government, the automated refraction machine was unable to obtain an adequate image for measurement in Crooker's left eye due to his cataract. Crooker appears to contend that the automated refraction machine simply failed independent of his cataract. Dr. Howard told Crooker that he would be scheduled for a manual refraction test.

On December 31, 2012, Crooker underwent a manual refraction test. The test showed that with the aid of a new prescription, Crooker's distance vision would be 20/40 in each eye and reading vision would be between 20/25 and 20/30. It specifically demonstrated that he would not have difficulty reading in the range of 12-15 inches, which is the distance at which Crooker indicated he preferred to read. Crooker expressed satisfaction with vision correction to 20/40.

The parties appear to dispute the actual date that Dr. Howard ordered eyeglasses for Crooker under the new prescription. Dr. Howard's declaration indicates that he placed the order on December 31, 2012, the day of the manual refraction test. However, Crooker has submitted two documents apparently sent to him by prison officials that indicate the glasses were ordered on February 7, 2013.

The parties agree that Crooker received the new eyeglasses on April 9, 2013. Crooker contends that during the time that he was without glasses, he experienced headaches when reading and watching television due to his cataracts.

**B.     Procedural Background**

On April 1, 2013, plaintiff filed an administrative tort claim with BOP. It was denied on October 22, 2013.

Plaintiff initiated this action by filing a complaint on November 25, 2013. He amended the complaint on December 10, 2013. Along with the eyeglasses claim, both versions of the complaint included claims for malicious prosecution, negligent dental care, and failure to provide cataract surgery.

On March 4, 2014, plaintiff moved for partial summary judgment on the eyeglasses claim. On March 11, 2014, the Court stayed briefing on the summary judgment motion pending a ruling on defendant's then-pending motion to dismiss. Defendant filed the motion to dismiss on April 16, 2014.

On July 23, 2014, the Court granted the motion to dismiss in part, but denied it with respect to the eyeglasses claim and portions of the dental claim and cataract claim.

On November 30, 2014, defendant moved for summary judgment on the remaining claims. In his two filings opposing the summary judgment motion, made on December 17 and December 22, 2014, plaintiff waived the dental claim and cataract claim.

**II.     Legal Standard**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

Under the Federal Tort Claims Act (FTCA), "the United States [may be liable for] . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

### III. <u>Analysis</u>

Plaintiff's FTCA action is essentially a claim of negligence. Under Massachusetts law,

such a claim requires proof that (1) defendant owed a duty to plaintiff, (2) defendant breached that duty, (3) the breach was the proximate cause of plaintiff's injury, and (4) plaintiff suffered actual damage or injury. *Buculei v. United States*, No. 09-40215, 2012 WL 3263611 at *1 (D. Mass. Aug. 7, 2012) (citing *Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51, 58 (1st Cir. 2011). Plaintiff can demonstrate the existence of a duty by showing that "a physician-patient relationship existed between [a] physician and the injured party." *Mitchell v. United States*, 141 F.3d 8, 13 (1st Cir. 1998). Plaintiff "must present expert testimony as to the standard of care and its breach, unless the breach is sufficiently obvious as to lie within the common knowledge of the jury." *Primus v. Galgano*, 329 F.3d 236, 241 (1st Cir. 2003).

Defendant contends that plaintiff will necessarily be unable to meet his burden of proof, because he has no supporting expert witness opinion. However, where a plaintiff's claim is based primarily on a claim of negligent delay on the part of medical personnel, expert testimony is not necessarily required. *See Buculei*, 2012 WL 3263611 at *2 ("[T]he Court does not agree that *Primus* and its progeny require summary judgment in Defendant's favor. Although Defendant has provided an affidavit [from] a dentist at Devens, chronicling the record of [plaintiff's] dental history, this affidavit does not address the delay in responding to cop-outs.").[3]

Here, the facts must be construed in the light most favorable to plaintiff. According to plaintiff, he had no prescription eyeglasses upon his arrival at FMC Devens on January 11, 2012, and immediately started complaining about his eyesight and need for glasses. He did not receive his new eyeglasses until April 9, 2013, despite having been seen for eye examinations on April

---

[3] Defendant cites to later history in *Buculei v. United States* as support for the proposition that expert testimony is required to prove plaintiff's case. *See Buculei*, No. 09-40215, 2013 WL 5513872 at *13 (D. Mass. Sep. 30, 2013). However, defendant's citation is to the bench trial opinion. The case advanced past the summary judgment stage despite the lack of an expert witness.

13, September 10, and December 31, 2012. Plaintiff does not appear to claim that Dr. Howard used negligent techniques or breached the standard of care in the course of conducting these examinations; rather, he claims that a 15-month delay in providing him with eyeglasses was a breach of BOP's duty to provide "decent, timely health care to its constituency." *See United States v. DeCologero*, 821 F.2d 39, 43 (1st Cir.1987). The nature of this alleged breach is "sufficiently obvious as to lie within the common knowledge of the jury." *Primus*, 329 F.3d at 241.[4]

Nor can it be said that plaintiff cannot demonstrate "actual damage or injury" without expert testimony. *See Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51, 58 (1st Cir. 2011). Plaintiff's contention that, due to his cataracts, he suffered headaches when attempting to read or watch television without glasses, would seem to meet a standard definition of physical harm. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 4 (2010) ("'Physical harm' means the physical impairment of the human body . . . . Bodily harm includes physical injury, illness, disease, impairment of bodily function, and death."). Indeed, even without the headache contention, plaintiff appears to allege the "impairment of [a] bodily function"—that is, his eyesight. *See id.* Plaintiff's proof of actual injury will turn on the credibility of his own testimony (assuming he testifies) and any other evidence that may support his self-reported claims of injury. Under the circumstances, no expert witness is needed to prove that element.

Beyond proving a breach of duty and actual injury, plaintiff must also prove a causal link between BOP's alleged breach and his injury. *See Harlow v. Chin*, 405 Mass. 697, 702 (1989).

---

[4] The Court takes no position as to whether a 15-month delay in providing eyeglasses does in fact constitute a breach of duty.

7

"This causal link generally must be established by expert testimony that the injury was more probably than not a result of the physician's negligence." *Id.* (citing *Berardi v. Menicks*, 340 Mass. 396, 402 (1960)).  However, plaintiff is "not required to eliminate entirely all possibility that the defendant's conduct was not a cause.  It is enough that [he] introduce evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not." *Mullins v. Pine Manor College*, 389 Mass. 47, 58 (1983).  Where a reasonable juror could infer causation from other evidence, expert testimony is not required to establish causation.  *See, e.g.*, *Couture v. Carlo Molinari, Inc.*, 25 Mass. L. Rptr. 140 (Mass. Sup. Ct. 2009).

Here, as explained above, plaintiff's alleged injuries are headaches and impaired eyesight.  As to the headaches, plaintiff can testify not only as to the alleged pain and suffering they caused him, but also as to their timing—when they began and when they ended (if at all).  Depending on the nature of this testimony, it could establish that plaintiff only experiences headaches when not wearing glasses and never experiences them when wearing glasses.  Although "[c]orrelation is not causation," this level of correlation could (again, depending on the specific testimony) be sufficiently strong that a reasonable jury could conclude that it is more probable than not that plaintiff's headaches were caused by his lack of eyeglasses.  *See Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 33 & n.6 (1st Cir. 2012).

Moreover, the parties do not appear to dispute causation with respect to plaintiff's second alleged injury—impaired vision.  Defendant's statement of material facts states that, as of April 2012, plaintiff's vision was 20/70 in the right eye and 20/40 in the left eye without eyeglasses.  (Def. S.M.F. at ¶ 30).  It further states that a manual refraction test (conducted in December

8

2012) showed that a new prescription would improve plaintiff's distance vision to 20/40 in each eye and his near (reading) vision to "approximately 20/25-20/30." (*Id.* at ¶ 31). While defendant does not concede damages with respect to plaintiff's impaired vision, it does appear to concede the existence of a causal link between his impaired vision and his alleged lack of eyeglasses. Accordingly, plaintiff does not need expert testimony to establish causation.

Separate from the issue of expert testimony, defendant contends that summary judgment should be granted because the ophthalmologic care provided to plaintiff was "appropriate." (Def. Mem. at 9). It contends that "[t]he length of time it took to obtain a new prescription was not the result of negligent care." (Def. Mem. at 11). But "breach of duty of care and negligence are typically questions of fact" for the factfinder to evaluate. *Swan v. United States*, 698 F. Supp. 2d 227, 231 (D. Mass. 2010); *see Roderick v. Brandy Hill Co.*, 36 Mass. App. Ct. 948, 949 (1994) ("Ordinarily, summary judgment is not an appropriate means to resolve negligence cases. . . .") (citing *Mullins*, 389 Mass. at 56). The Court cannot say, as a matter of law, that a 15-month (or 12-month) delay in providing eyeglasses, under the circumstances of this case, does not constitute negligence.[5]

However, the Court also cannot say that the delay in providing eyeglasses to plaintiff *was* negligent as a matter of law. Again, "the question of negligence is one of fact for the jury." *Mullins*, 389 Mass. at 56. Accordingly, both motions for summary judgment on the claim based on failure to provide eyeglasses will be denied.

---

[5] The government correctly notes that plaintiff "cannot claim negligence simply because he was not able to direct the type of [sic] level of treatment." (Def. Mem. at 12). That does not, however, accurately describe the nature of plaintiff's claim. The negligence claim is based on the alleged delay in care, not the failure to permit plaintiff to direct that care.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment on the eyeglasses claim is DENIED. Defendant's motion for summary judgment is GRANTED as to the claims based on alleged failures to provide treatment for cataracts and failure to provide non-emergency dental treatment, and is otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: February 3, 2015